M. H. MORGAN v. VILLAGE OF MOUNTAIN LAKE.[1]

March 22, 1935.

No. 30,266.

[1]Reported in 259 N. W. 689.

*Somsen & Dempsey,* for appellant.

*Kyle & Kyle* and *Harold G. Lund,* for respondent.

*Harry H. Peterson,* Attorney General, *David J. Erickson,* Assistant Attorney General, and *Joseph M. Donahue* and *Dwight N. Johnson, amici curiae,* filed a brief in support of the contention of respondent.

HILTON, JUSTICE.

Appeal from a judgment declaring valid and legal a special election held upon the question of erecting and establishing a municipal lighting and heating plant for public purposes and for the private use of the inhabitants of the village of Mountain Lake (respondent).

Respondent is a municipal corporation in the state of Minnesota. Electric light and power were furnished it by the Interstate Power Company under a franchise expiring in April, 1934. On August 9, 1933, the village council adopted plans and specifications for a municipal lighting plant, and on that date its clerk was directed to advertise for bids for a power house, distribution system, and electric generating equipment. On September 6, 1933, bids were received, among them being a bid of Fairbanks, Morse & Company, which bid, being the lowest received for the electric generating equipment, was on that day accepted by the village and a contract was duly entered into, conditioned upon the result of an election to be held on October 3, 1933, upon the following two questions:

"Shall the Village of Mountain Lake in the County of Cottonwood, and State of Minnesota, erect and establish a lighting and

heating plant for the purpose of supplying light and heat for public purposes, and for the private use of the inhabitants of said village?"

■ "Shall the bonds of the Village of Mountain Lake  *  *  * be issued to the State of Minnesota in the aggregate amount of Forty-Five Thousand ($45,000.00) Dollars, bearing interest at the rate of 4¼% per annum, the proceeds thereof to be used for the purpose of erecting a Distribution System, acquiring a site for a Power House, and constructing a Power House for a municipal lighting and heating plant, said bonds to be numbered and to mature as set forth in the resolution now on file in the office of the village clerk?"

At the election there were cast 576 votes in favor of the first proposition and 95 against; on the second proposition there were 582 votes in favor and 93 against. There is no attack on the accuracy of the canvass so showing.

Appellant, M. H. Morgan, the local agent of the Interstate Power Company at Mountain Lake, instituted this contest at the instance and request of the power company, the latter paying the expenses therefor. The claim of appellant is that the election was invalid because of violations of provisions of the general election laws of the state and "particularly of the corrupt practices act."

1 Mason Minn. St. 1927, § 488, provides for contest of elections. It permits "any voter" to contest the election of "any person for or against whom he had the right to vote, who is declared elected to a state, county, or municipal office, or the declared result upon a constitutional amendment or other question submitted to popular vote." Contest of an election on the grounds of violation of the corrupt practices act is authorized by § 570 thereof. It provides:

"Any twenty-five voters of the state, or of any political division thereof, may contest the right of any person to nomination, position, or office for which said voters had the right to vote, on the ground of deliberate, serious and material violation of the provisions of this act or of any other provisions of law relating to nominations and elections. Any defeated candidate for said nomination, position or office may make said contest.  *  *  *"

It is obvious that this contest was not instituted under authority of § 570, but under § 488. It is also obvious from the language of § 570 and from the language of the whole corrupt practices act that the contest authorized thereby does not apply to elections upon questions such as are here involved for violations of any of its provisions. Prior to the enactment of the corrupt practices act in 1912 there was no legislative authority for contesting an election other than that given by R. L. 1905, § 336 (now § 488). The commission or omission by a candidate of acts now prohibited or required of a candidate by the corrupt practices act were not before its passage grounds for contesting his nomination or election. There is no expressed authorization in the act for a contest of an election such as this for violations of its provisions; neither is there anything that would justify an implication to that effect. The advisability of making the corrupt practices act applicable to an election such as this is for the determination of the legislature.

However, we agree with the trial court that whether or not the corrupt practices act is applicable no violation of its provisions or the provisions of the general election laws is shown. We have carefully examined the voluminous record and have been greatly helped by the able briefs and oral argument of opposing counsel and are of the opinion that the findings of fact and conclusions of the trial court are abundantly supported by the evidence. The court found:

"That the claims of contestant, that said election is null and void; that the election was not duly called; that no notice of said election was published or posted, as required by law; that said election was not fairly and honestly conducted; that the election officials improperly permitted other persons to receive and handle ballots and permitted said persons to remove large numbers of ballots from their custody and take the same to persons in various places in said village to mark said ballots in favor of said propositions and cause them to be received and counted for said propositions; that such officials permitted said persons to examine and ascertain how voters had cast their votes on said propositions; that

members of the village council, members of a citizens' committee appointed by it, and representatives of Fairbanks, Morse & Company, promised voters employment if said propositions carried and if such voters would vote in favor thereof, and that many voters thus promised voted in favor of said propositions; that such persons promised exceedingly low rates for electric current to voters; that they offered to pay a nonresident a substantial sum to influence voters to vote for said propositions; that such persons threatened to boycott voters who voted against said propositions; that they indulged in the practices of coercion, duress, threats and other fraudulent means to frighten and dissuade voters; that said persons, knowingly and wilfully, made, published and caused to be made and published false statements in relation to said propositions; that Fairbanks, Morse & Company for several months conducted a campaign in said village to create dissatisfaction with the electric service furnished to said village and its inhabitants, and that such persons improperly caused many voters to vote for said propositions who otherwise would have voted against the same, and caused many other voters not to vote at all; are found unproved and untrue."

In its memorandum, after having determined that the corrupt practices act did not apply and that even if it did it had not been violated, the trial court stated:

"This leaves for consideration the contest under the general law.

"The most that can be said is that a spirited and hotly contested election was held, at which the largest vote ever cast in the village was recorded. But that is all.

"The right of the voter to cast his vote and have it counted as cast is of the highest importance. Such right commands the most careful and solicitous consideration of the court. That consideration I have given. The voter's rights are inestimable and should not be disturbed except upon the showing of a state of facts making that result imperative and inescapable. There is no such showing here.

"It appears conclusively, in my judgment, that the voters were not misled or improperly influenced, that the election was hotly con-

tested but fairly conducted. It follows then that, whether the election was within or without the corrupt practices act, it was a legal election, and the results should be left in force."

In its memorandum in Interstate Power Co. v. Fairbanks, Morse & Co. 194 Minn. 110, 259 N. W. 691, filed herewith, the court made the following comment:

"An inspection of the record in this case and in the election contests, made a part of the record in the case at bar, shows that plaintiff was the aggressor in all the political activity surrounding the election; that, if any law was violated or if there was any improper conduct, the plaintiff power company was guilty. Under the doctrine of clean hands, it would not seem that the power company could complain of a violation of which it itself is guilty, or complain of conduct which it caused by the publication of unfair statements. To deny defendants the right to answer such statements, would place a handicap upon them never intended in the law."

No errors are assigned to the rulings of the trial court with regard to the reception or refusal of evidence, and there is nothing further presented for consideration.

Affirmed.

STONE, JUSTICE, took no part.